UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

| | |
|---|---|
| **DARRICK C. SCHREINER** <br> 113 West Conwell Street <br> Aurora, IN 47001 <br><br> Plaintiff, <br><br> -vs- <br><br> **WILD FLAVORS, INC.** <br> **A/K/A ADM WILD FLAVORS** <br> C/O CT Corporation System <br> 306 W Main Street <br> Frankfort, KY 40601 <br><br> Defendant. | Case No: <br><br> Judge: |

## COMPLAINT WITH JURY DEMAND

Darrick C. Schreiner states the following for his Complaint against Wild Flavors, Inc.:

### PARTIES

1. Plaintiff Darrick C. Schreiner ("Mr. Schreiner") is a resident of Aurora, IN. Plaintiff's claims arose out of an employment relationship with Defendant Wild Flavors, Inc.

2. Wild Flavors, Inc. a/k/a ADM Wild Flavors ("Defendant") is a corporation registered with the Kentucky Secretary of State doing business in Kenton County, Kentucky. Defendant employs over 300 employees and engages in interstate commerce. Defendant is a supplier of natural flavors, ingredients, and systems for the food and beverage industry. Defendant has multiple departments and different types of physical labor and office work jobs for its hundreds of employees.

## JURISDICTION AND VENUE

3. This Court has jurisdiction to hear this case under 28 U.S.C. § 1331 because Mr. Schreiner asserts claims arising under the Americans With Disabilities Act ("ADA").

4. Mr. Schreiner also states claims under the laws of the State of Kentucky. These claims are inherently related to the other claims in this case, over which this Court has original jurisdiction, that they are a part of the same case or controversy under Article III of the United States Constitution. Accordingly, this Court has supplemental jurisdiction of these claims under 28 U.S.C. § 1367.

5. Venue is proper in this Court because the transactions and occurrences occurred in Erlanger, Kentucky.

6. Mr. Schreiner made a claim with the Equal Employment Opportunity Commission and received a right to sue letter from the Commission.

## BACKGROUND FACTS

7. Mr. Schreiner began working for Defendant in 2015 as a full-time employee and was a full-time employee until Defendant terminated him.

8. Mr. Schreiner was qualified for his position and he received great performance reviews.

9. In fact, Defendant promoted Mr. Schreiner and Mr. Schreiner received accolades from Defendant and many others regarding his superior performance.

10. Mr. Schreiner is well-liked by many of Defendant's employees and management.

11. When Mr. Schreiner started working for Defendant, his job duties required him to run dry blend machines.

12. Mr. Schreiner started working for Defendant as a dry blend operator and Defendant eventually promoted him to a team lead because of his outstanding work performance.

13. Most of the dry blend machine operating work did not require much physical endurance other than operating the controls of the machine and loading the product into the blender.

14. The heaviest item Mr. Schreiner would need to lift as a dry blend operator was approximately fifty pounds.

15. Mr. Schreiner worked as a dry blend operator until Defendant terminated him.

16. In approximately May of 2019, Mr. Schreiner injured his bicep in a work-related accident.

17. Indeed, Mr. Schreiner suffered a ruptured bicep tendon.

18. The injury was severe. Because of his injury, Mr. Schreiner was unable to cook, clean, lift, pull, and adequately sleep. Likewise, Mr. Schreiner was unable to use his left arm for most activities and his bicep had difficulty engaging and disengaging.

19. When Mr. Schreiner injured himself at work, his managers attempted to thwart him from going to the doctors or filing a worker's compensation claim.

20. Defendant told Mr. Schreiner to take some ibuprofen and his pain would go away.

21. Mr. Schreiner did seek medical attention and was about to take an MRI until the doctor spoke with Defendant and the doctor changed his mind and did not take the MRI.

22. A week later, Mr. Schreiner returned to the doctors and took an MRI.

23. The MRI showed the torn bicep and the doctor recommended Mr. Schreiner undergo surgery.

24. Mr. Schreiner underwent the surgery and returned to work.

25. When Mr. Schreiner returned to work, he was limited in the amount of lifting he could do with one arm.

26. However, he was able to complete his job duties with only one arm.

27. Mr. Schreiner underwent physical therapy after his surgery.

28. The physical therapy required him to allow time for his arm to rest to fully recover.

29. After a long period attempting to recover, Mr. Schreiner's doctor recommended work restrictions so his arm could rest and fully recover. It was the Doctor's opinion that Mr. Schreiner's severe arm limitations and failure to fully recover was because he was using his arm too much at work and was not allowing resting and recovery time.

30. Indeed, months after the work-related accident, Mr. Schreiner was still in severe pain and his range of movement in his arm was severely limited. Mr. Schreiner's left arm still had significant immobility and he had great difficulty lifting and pulling.

31. These work restrictions included a maximum of 40 hours a week of working and a 50-pound weight restriction.

32. Before requesting accommodations, Mr. Schreiner regularly worked over 40-hours a week.

33. Mr. Schreiner's doctors believed that this work restriction would allow time for his arm to fully heal.

34. When Mr. Schreiner first presented the Doctor's note and request for accommodations, Defendant badgered him with questions and wanted to know why he needed the accommodations.

35. In fact, Defendant did not believe the doctors' explanation of why the accommodation was medically necessary and had Mr. Schreiner's doctor answer additional questions and fill out additional paperwork.

36. Mr. Schreiner had his doctor fill out the requested documentation.

37. Not surprisingly, Defendant was still not happy with Mr. Schreiner's Doctors' explanations and again had him fill out more paperwork.

38. Defendant even accused Mr. Schreiner of forging his doctor's note because it had "two different handwritings."

39. Thus, Defendant played armchair doctor and accused Mr. Schreiner of not needing an accommodation.

40. Likewise, Defendant constantly questioned Mr. Schreiner's need for work restrictions.

41. Defendant allowed Mr. Schreiner to work with accommodations for a short period of time. However, Defendant eventually terminated him claiming it could "no longer accommodate" his disabilities.

42. Days after Mr. Schreiner requested accommodations, Defendant demoted him from the team lead position.

43. This was strange to Mr. Schreiner because his supervisor informed Defendant that he needed an employee to do the work Mr. Schreiner was doing while on limited work duty.

44. Mr. Schreiner could perform all job duties with the requested accommodations.

45. Mr. Schreiner's requested accommodations were reasonable.

46. Likewise, Defendant decided to terminate Mr. Schreiner within weeks of informing Defendant that he had hired an attorney to pursue a workers' compensation claim.

47. Upon information and belief, Defendant replaced Mr. Schreiner with a non-disabled person.

48. Defendant would not allow Mr. Schreiner to use his personal time off ("PTO") days for doctors' visits. Instead, Defendant required Mr. Schreiner to make up the missed time and come in and work on the weekend. This required Mr. Schreiner to work over 40-hours a week.

49. Mr. Schreiner suffered damages because of Defendant's actions.

## CLAIMS FOR RELIEF

### COUNT I
### Disability Discrimination and Failure to Accommodate Under the Americans with Disabilities Act

50. Mr. Schreiner restates and incorporates all paragraphs.

51. The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

52. Because Mr. Schreiner's injuries substantially limit at least one of his major life

activities, he is an individual with a disability under the ADA.

53. Mr. Schreiner was fully qualified for his position and he could perform all the essential functions of the position.

54. Defendant is a covered employer to which the ADA applies.

55. Defendant terminated Mr. Schreiner from employment solely because Mr. Schreiner had a disability or because Defendant perceived or regarded Mr. Schreiner as having a disability.

56. Mr. Schreiner was ready, willing, and able to perform his job duties with a reasonable accommodation.

57. Mr. Schreiner presented doctors' notes saying that he could perform the essential job duties with limited accommodations.

58. Defendant harassed Mr. Schreiner about his disability and had his doctor fill out paperwork several times because Defendant believed that the accommodations were not medically necessary.

59. Defendant terminated Mr. Schreiner because of his disability and request for accommodations.

60. Defendant informed Mr. Schreiner that it could no longer accommodate him and terminated him.

61. Defendant made no individualized assessment to determine whether Mr. Schreiner could perform the essential job functions or whether a reasonable accommodation would enable him to be employed.

62. Defendant's termination of Mr. Schreiner based on of his disability or perceived disability and Defendant's failure to make an individualized assessment to determine whether

7

Mr. Schreiner could be employed or whether a reasonable accommodation would enable him to be employed by Defendant violated the ADA.

63. As a result of Defendant's actions, Mr. Schreiner has suffered and will continue to suffer both economic and non-economic harm.

64. Defendant terminated Mr. Schreiner because he had a disability and because it did not want to accommodate his disability.

65. Defendant's actions were malicious and in a conscious disregard of the rights of Mr. Schreiner.

## COUNT II
**Retaliation Under the Americans with Disabilities Act**

66. Mr. Schreiner restates and incorporates all paragraphs.

67. The ADA provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

68. Mr. Schreiner told his managers and Defendant's HR department that he believed he was being discriminated against because of his injuries.

69. Defendant terminated Mr. Schreiner within weeks of informing Defendant that he had hired an attorney to pursue a workers' compensation claim for his disability.

70. Defendant demoted Mr. Schreiner in a different work position when he requested disability accommodations.

71. Because of Defendant's retaliation, Mr. Schreiner has suffered and will continue to suffer both economic and non-economic harm.

72. Defendants actions were willful and in a conscious disregard of the rights of

Mr. Schreiner.

## COUNT III
### Disability and Perceived Disability Discrimination
### Under KRS § 344.010 et seq.

73. Mr. Schreiner restates and incorporates all paragraphs.

74. Mr. Schreiner has disabilities regarding his arm that required a surgery and lengthy physical therapy.

75. Mr. Schreiner was fully qualified for his position and he could perform all the essential functions of the position.

76. Mr. Schreiner's injuries substantially limits at least one of his major life activities.

77. Defendant was aware of Mr. Schreiner's disabilities.

78. However, Mr. Schreiner presented doctors' notes saying that he could perform the essential job duties with limited accommodations.

79. Defendant harassed Mr. Schreiner about his disability and had his doctor fill out paperwork several times because Defendant believed that the accommodations were not medically necessary.

80. Indeed, Defendant constantly harassed Mr. Schreiner about the need for accommodations.

81. Defendant discriminated against Mr. Schreiner because of his disabilities.

82. Defendant terminated Mr. Schreiner because it did not want to accommodate his disabilities.

83. Mr. Schreiner suffered an adverse employment action because of his disabilities or perceived disabilities.

84. Because of Defendant's discrimination, Mr. Schreiner has suffered and will continue to suffer both economic and non-economic harm.

85. Defendants actions were willful and in a conscious disregard of the rights of Mr. Schreiner.

### COUNT IV
### Disability Retaliation Under KRS § 344.010 et seq.

86. Mr. Schreiner restates and incorporates all paragraphs.

87. Mr. Schreiner took time off work for a disability.

88. Defendant's agents and managers harassed and antagonized Mr. Schreiner for requesting a disability accommodation.

89. Mr. Schreiner provided a doctor's note claiming he was safe to work for Defendant with limited accommodations.

90. Mr. Schreiner could perform the essential job functions with limited accommodations.

91. Defendant terminated Mr. Schreiner because it did not want to accommodate his accommodations.

92. Mr. Schreiner complained to Defendant because he believed he was being discriminated against because of his disabilities and was terminated shortly after this complaint.

93. Mr. Schreiner suffered damages because of Defendant's retaliation.

94. Defendants actions were willful and in a conscious disregard of the rights of Mr. Schreiner.

## COUNT V
### Worker's Compensation Retaliatory Discharge
### Under KRS § 342.197 et seq. and Kentucky
### Common Law

95. Mr. Schreiner restates and incorporates all paragraphs.

96. KRS § 342.197 states that "[n]o employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful claim under this chapter."

97. Mr. Schreiner injured himself on the job while working for Defendant.

98. When Mr. Schreiner injured himself at work, his managers attempted to thwart him from going to the doctors or filing a worker's compensation claim.

99. Because of the workplace injury, Mr. Schreiner required a surgery and months of physical therapy.

100. Weeks after Mr. Schreiner informed Defendant that he intended to file a worker's compensation claim and that he had hired an attorney to pursue the claim, Defendant terminated him.

101. Mr. Schreiner filed a worker's compensation claim.

102. Mr. Schreiner's filing of a workers' compensation claim was a substantial and motivating factor in Defendant's decision to terminate him.

103. Mr. Schreiner suffered damages and will continue to suffer damages because of Defendants retaliatory discharge.

104. Defendants actions were willful and in a conscious disregard of the rights of Mr. Schreiner.

**WHEREFORE**, Mr. Schreiner respectfully requests that this Court find for him and award him the following:

    a. Compensatory damages;

    b. Statutory damages;

    c. Interest;

    d. Punitive damages;

    e. Attorney fees;

    f. Costs;

    g. Litigation expenses; and

    h. All other relief this Court deems proper.

Respectfully Submitted,

/s/ Robert L. Thompson
**Robert L. Thompson (OH: 98126/ KY: 98791)**
THOMPSON LEGAL LLC
10529 Timberwood Circle, Unit B
Louisville, KY 40223
P: (502) 366-2121
F: (502) 438-9999
Robert@RthompsonLegal.com
*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.

*/s/ Robert L. Thompson*
Robert L. Thompson (OH: 98126/ KY: 98791)